WILLIAM WOODBURY & als. versus GEORGE BRAZIER.

The owners of a vessel have a legal right to take it from the custody and control of the master, whenever and wherever they see fit to do so.

The *compensation* of the master depends solely upon his contract with the owners; but, as their agent, he is entitled to be reimbursed for his necessary expenses *while in their service.*

A master, employed under a general contract at one place to go to another and take charge of a vessel, is in the service of the owners, as soon as he starts, and they are bound to re-pay the expenses of his journey.

When he is discharged in a foreign port, he is no longer in their service, and cannot recover of them the expenses of his homeward passage.

The laws of the United States, allowing extra pay to seamen discharged from an American vessel in a foreign port, do not apply to the master.

When the compensation of the master is monthly wages, and a commission, he is entitled to his commission upon sums received as *demurrage.*

ON FACTS AGREED.

ASSUMPSIT by the plaintiffs, as *owners* of a vessel, against the defendant, as *master*, for an alleged balance of the earnings remaining in his hands.

The facts are stated in the opinion.

*Barnes*, for plaintiffs.

1. The defendant had no right to charge his expenses in going to New York, because the right to compensation for service, or to make charges on the ground of service, commenced only when and where the service commenced.

2. He had no right to charge for his expenses in returning from Havre, after his discharge, because, by the laws of shipping, on such facts as are now agreed, shipowners may terminate the service of the master, when and where they please. His rights to compensation, or to make charges in the nature of compensation for expenses afterwards incurred for himself, then ceases.

And, as to such expenses, incurred before or after the term of employment, the rule of law is the same in all contracts for service, whether on sea or land.

Woodbury *v.* Brazier.

3. The defendant is not entitled to retain his commissions on the sum collected as *demurrage*.

Demurrage is well known in the law of shipping to be a mere reimbursement of expenses incurred, when the charterer suffers the ship to be delayed. Under such delay, seamen's wages and subsistence, and other like expenses, would be a dead loss to the owners, if not defrayed by demurrage. Such reimbursement is no gain to the owners. It calls for no ability or skill on the part of the master. He has no service to render in regard to it, except simply to collect it and account for it.

He cannot, therefore, have commissions on it, or make any profit out of it. To allow him a commission on demurrage money, instead of stimulating him to activity and the exercise of skill, would tend to a contrary effect. It would make it for his advantage to have the ship delayed, to the loss of his owners in all other respects. The interest on their capital, the cost of insurance and the wear and exposure of the ship, would be running on to their injury. The master might enjoy a delay in a favorite port, if, besides his wages and his interest in the freight, he was to have also commissions on the very stores consumed in the delay by himself and the crew, and on the wages of a large and expensive crew.

It is obvious that the activity of a skilful master may greatly shorten the time required for loading a ship, as compared, all other things being equal, with the case, where the master may make a personal profit out of the delay.

If his commissions are confined to the productive freight, this tends to secure his activity in shortening delays as much as possible.

Such being the reasons for the law, *such is the law* governing a contract, for commissions, stated as the contract is, in this case.

*Anderson & Webb*, for defendant.

1. The defendant rightly retained the amount of his expenses to New York. His services commenced as soon as he started.

2. The sum received for demurrage was as much the earnings of the vessel, as if received for freight. He is entitled to his commissions upon it.

3. The cost of his passage home from Havre was rightly charged.

It cannot be reasonably pretended that either party designed that the contract should be abruptly terminated at the pleasure of one, without regard to the rights of the other. If the captain had wantonly abandoned his office in a foreign port, where it would have been injurious to the owners, he would have been liable to them for damages. He had agreed to sail their ship on a general freighting business, and could have no right to leave his duty at his mere caprice. The indefinite time for which the engagement was made could have no effect upon the rights and obligations of the parties, or, if there is any difference, it is that, under a general engagement for hire and service, the parties would be required to close their relations cautiously, so as to avoid damage to either, while, in case of contract for a particular voyage or a specific period, the end would be gained by the performance of the voyage or the expiration of the time, and neither plaintiffs or defendant could complain that his discharge of the duties voluntarily assumed had left him in an unfavorable position, or imposed loss on him. But, although it may be contended, that shipowners may at any time displace a master whom they have appointed, with or without any specific arrangement as to the length of his employment, there is no reason or justice in the proposition that such dismissal can be made without compensation to him.

The opinion of the Court was drawn up by

DAVIS, J.—The owners of a ship have a legal right to take it from the custody and control of the master, at any time, and in whatever place. If a seaman is discharged from an American vessel in a foreign port, he is entitled to extra pay, under the laws of the United States. But no such provision is made for the master. His compensation depends

Woodbury *v.* Brazier.

entirely upon, and is limited by the terms of his contract with the owners.  All considerations of justice, and equity, are presumed to have received the attention of the parties, and to have been provided for, at the time of making the contract.  If not, it is their own fault, or misfortune.  Courts of justice cannot *make* contracts for parties; they can only construe and enforce them.  They can no more insert stipulations improvidently omitted, than strike out those which the parties have inserted.

The defendant, in August, 1854, residing and then being in Portland, agreed with the owners of the ship Portland, who also resided at the same place, " to be the master of the ship, his compensation to be twenty dollars per month, and five per cent. commissions."

As the agent of the plaintiffs, he was entitled to be reimbursed for all his necessary expenses *while in their service.* It becomes necessary, therefore, for us to determine when his employment for the plaintiffs commenced, and when it terminated.

It is agreed, that, after the contract was made, " he went to New York, from Portland, to take charge of the ship."  He was in the employment of the owners from the time of starting.  He went, not for any business of his own, but *for them*, in their service.  The contract attached the moment he began to act for them; and his capacity as master, did not depend upon his being personally on board the ship, or in the same port.  He might have been acting as master, in purchasing supplies, seeking freights, or otherwise, some time *before* leaving home.  That he was thus acting from the time when he commenced his journey, we cannot doubt.  Such is the reasonable construction of the contract.  His expenses in going to New York he rightfully charged to the owners of the ship, and retained the amount from their funds in his hands.

He was discharged, in September, 1857, in Havre, in France.  " He came thence to New York, in a packet steamer, paying for his passage one hundred and fifty dollars."

Woodbury *v.* Brazier.

After his discharge, he was no longer in the service of the plaintiffs, and could rightfully charge none of his expenses to them, because not made in prosecuting their business. It would seem no more than just, as they discharged him in a foreign port, for them to pay his expenses in returning home. But he knew his liability to be so discharged; and he might have made provision for it in his contract. Not having done so, he must abide the consequences of the oversight. He could not have recovered the amount of his expenses from the owners; and he had no right to retain it from their funds.

He made several voyages while he was master, upon one of which, while waiting for a cargo of guano at the Chincha Islands, he received $1120, for *demurrage*, which became due by the terms of the charter for the voyage. Upon this sum he charged to the owners, and retained from their funds, five per cent. for his commissions. This he had a right to do. A vessel lying in port, waiting for a cargo, needs the care of a master. And if the owners are receiving pay for it, under a charter which the master has made, he is entitled to commissions thereon, as much as upon any other earnings of the vessel, unless a distinction is made by his contract, which excepts such earnings therefrom.

According to the agreement of the parties, judgment is to be rendered for the plaintiffs for one hundred and fifty dollars, with interest thereon from October .10, 1857, when demand of payment was made.

TENNEY, C. J., APPLETON, CUTTING, MAY and GOODENOW, JJ., concurred.